**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BENJAMIN PATTERSON,

        Plaintiff,

        v.

SLI, LLC, et al.,

        Defendants.

No. 25 CV 7719

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Defendants SLI, LLC, SLI Holdings, LLC, SLTI, LLC, SLI Investors, LLC, and BC Brands, LLC manufacture and market vapable products. Plaintiff Benjamin Patterson purchased two of defendants' products from a third-party dispensary. He brings claims against defendants for violating the Illinois Consumer Fraud Act, as well as for common-law fraud, fraudulent concealment, breach of express warranty, breach of implied warranty, and unjust enrichment. Defendants move to dismiss under Rule 12(b)(1) for lack of standing and Rule 12(b)(6) for failure to state a claim. For the reasons discussed below, defendants' motion to dismiss is granted.

## I.    Legal Standards

Federal Rule of Civil Procedure 12(b)(1) governs dismissals based on lack of subject matter jurisdiction. Article III of the Constitution confines the federal judicial power to resolving "cases" and "controversies." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). A case or controversy exists only where the plaintiff has a personal stake in the case (i.e., standing). *Id.* To satisfy standing, "a plaintiff must show (i) that

he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). As the party invoking federal jurisdiction, plaintiff bears the burden of establishing standing. *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024). Because defendant makes a facial challenge to plaintiff's standing, I accept all well-pleaded allegations as true and draw all reasonable inferences in plaintiff's favor. *Id.*

Federal Rule of Civil Procedure 12(b)(6) governs dismissals based on failure to state a claim upon which relief may be granted. To survive a 12(b)(6) motion, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a complaint's sufficiency, courts "accept as true all well-pled facts and make any reasonable inferences in the non-movant's favor." *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 664 (7th Cir. 2022).

A plaintiff alleging fraud under the Illinois Consumer Fraud Act must meet the heightened pleading standard of Rule 9(b). *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736–37 (7th Cir. 2014). Under Rule 9(b), the plaintiff must identify "the who, what, when, where, and how of the fraud." *Id.* (citation omitted).

2

## II.  Background

Defendants manufacture, market, label, and package cannabis-infused products (CIPs). [1] ¶¶ 1–5.[1] Defendants' CIPs are vapable products ("vapable oils") sold with the intent that they be vaped. [1] ¶ 4. Defendants sell their products under the brand names Breeze Canna and Cheetah. [1] ¶ 5. CIPs are safe to be consumed in potencies of no more than 100 milligrams of tetrahydrocannabinol per package. [1] ¶ 6. Plaintiff alleges that defendants' vapable oils universally exceed this safety limit by 10 or 20. [1] ¶ 6.

High THC potency cannabis products pose health risks. [1] ¶ 50. These products are linked to risk of adverse physical effects and psychiatric-related illnesses. [1] ¶ 52. Frequent use of these products also leads to dependence. [1] ¶ 54.

Cannabis is illegal at the federal level. [1] ¶ 32. Illinois similarly recognizes the risks inherent in the consumption of THC. [1] ¶ 59. Nevertheless, in 2019, Illinois passed the Cannabis Regulation and Tax Act, which legalized the possession and use of recreational cannabis by persons over the age of 21 in Illinois. [1] ¶ 47. The use of recreational cannabis in the state is subject to express safety requirements and limitations. [1] ¶ 47.

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers are taken from the CM/ECF header placed at the top of the filing. The facts are taken from the complaint, [1]. The court has subject-matter jurisdiction over the state-law claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2): plaintiff is a citizen of Illinois, defendant BC Brands is a citizen of Michigan for CAFA purposes, *see City of East St. Louis v. Netflix, Inc.*, 83 F.4th 1066, 1070 (7th Cir. 2023), and the aggregate claims of all members of the proposed class are in excess of $5,000,000. [1] ¶¶ 21, 26–28.

Two categories of cannabis products may be manufactured and sold to consumers in Illinois: smokeable products (cannabis concentrates) and CIPs (such as edibles and oils). [1] ¶ 65. CIPs are not intended to be smoked. [1] ¶ 66. The Illinois statute defines smoking as requiring combustion, whereas vaping does not require combustion. [1] ¶¶ 68–69. Product packages must define what the product is and label the product with its common name. [1] ¶ 75.

Illinois law imposes different regulations on cannabis concentrates and CIPs: Illinois residents can possess up to 5,000 milligrams of cannabis concentrate, but only 500 milligrams of THC in a CIP. [1] ¶ 83. Non-residents may possess only half of those quantities. [1] ¶ 84. The required product warnings also differ: smokeable concentrates must include a statement that "Smoking is hazardous to your health" and (most) CIPs must include a warning that reads "CAUTION: This product contains cannabis, and intoxication following use may be delayed 2 or more hours. This product was produced in a facility that cultivates cannabis, and that may also process common food allergens." [1] ¶ 76.

Plaintiff Benjamin Patterson bought a 1000-milligram Breeze Canna pen from a third-party dispensary. [1] ¶ 134. Patterson bought a second 1000-milligram Breeze Canna pen from the same third-party dispensary a few weeks later. [1] ¶ 132. Before purchasing the pens, plaintiff observed the packaging and description of the products on the dispensary's ordering platform. [1] ¶ 137. He also personally reviewed the label and packaging of the vapable oils before confirming his order. [1] ¶ 140.

Plaintiff alleges that the label and packaging indicated that the products complied with safety requirements and the law. [1] ¶¶ 140–41. He did not observe any warnings indicating that the vapable oils contained THC that exceeded safe limits or any instruction regarding how to safely use the products. [1] ¶ 143. Plaintiff further alleges that, on information and belief, the images on the dispensary ordering platform were created and approved by defendants (and thus that defendants had control over the representations made or omitted therein). [1] ¶ 142. According to plaintiff, the products he purchased were "actually CIPs that were dangerously potent and unsafe, and failed to comply with the State's recognized safety guidelines." [1] ¶ 153.

Plaintiff now seeks damages under the Illinois Consumer Fraud Act on the grounds that he would not have purchased the vapable oils but for defendants misrepresenting their safety and legality. [1] ¶¶ 166–223. He also brings claims for common-law fraud and fraudulent concealment based on the same conduct, [1] ¶¶ 224–53, as well as claims for breach of express warranty, breach of implied warranty, and unjust enrichment, [1] ¶¶ 254–317. He seeks to represent a class of consumers who purchased any of defendants' vapable oils containing more than 100 milligrams of THC within the state of Illinois. [1] ¶ 159.

### III.    Analysis

#### A.    Article III Standing

Defendants first argue that plaintiff fails to allege an injury in fact and thus lacks standing under Rule 12(b)(1). Defendants also argue that, even if Patterson did suffer an injury in fact, he lacks standing for products he did not purchase.

"[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing." *Sierra Club v. Morton*, 405 U.S. 727, 733 (1972). Plaintiff has alleged specific facts to support a concrete economic injury: Patterson alleges that he would not have purchased defendants' products had he known they were not safe, were misrepresented, lacked appropriate warnings, and lacked appropriate safe dosing instructions. [1] ¶ 154. This is the same financial injury that was found to support standing in *In re Aqua Dots Products Liability Litigation*. *See* 654 F.3d 748, 751 (7th Cir. 2011) (explaining that the lack of a discernable physical injury did not preclude standing for a financial injury arising from the risks associated with a particular product).[2] For standing purposes, Patterson is not required to plead more than that, such as what prices he would have paid or whether he could have purchased a similar product for a lesser price. *See id.*[3]

---

[2] Plaintiff's theory of standing is premised on the idea that he would not have purchased defendants' vapable oils had he known he could be subjected to criminal prosecution or fines. [29] at 10. He does not contend that his standing arises from any physical harm caused by the potency of defendants' products.

[3] Defendants' reliance on *Watt v. Trulieve Holdings Inc.* is unpersuasive. 2025 U.S. Dist. LEXIS 230921 (D. Ariz. Aug. 28, 2025). In *Watt*, the plaintiff's overpayment theory of standing was based on his assertion that he bought the defendant's product because of his belief that it was lawful. *Id.* at *7. The court rejected Watt's theory and found that "the omission of a product's potential non-compliance with state laws" was not actionable. *Id.* at

6

*In re Recalled Abbott Infant Formula* is distinguishable. 97 F.4th 525 (7th Cir. 2024). The *Abbott* plaintiffs alleged that there was a "potential risk" that the products they purchased were contaminated, but they did "not say they were subject to that risk in a personal and individual way." 97 F.4th at 529. As the court explained, the defect in *In re Aqua Dots* was universal: every toy posed a risk of harm. *Id.* at 529–30. In *Abbott*, by contrast, the plaintiffs did not allege facts suggesting that the defect was "sufficiently widespread so as to plausibly affect any given product, including the ones they purchased." *Id.* at 530.

The present case is more like *In re Aqua Dots*. Plaintiff alleges that all of defendants' vapable oils—including those he purchased—are "dangerous and worthless." [1] ¶ 220. Such a universal defect is a cognizable injury for the purposes of standing.[4] This is also unlike *Tepper v. Quaker Oats Co.*, where the alleged harm was hypothetical. 2025 WL 843710, at *4 (N.D. Ill. Mar. 18, 2025). Here, plaintiff has cited research confirming the dangers of high potency cannabis. [1] ¶¶ 50–62. Patterson has plausibly alleged an injury in fact.

But a plaintiff is not injured (for standing purposes) by a product he did not buy. *See Weaver v. Champion Petfoods USA, Inc.*, 3 F.4th 927, 936 (7th Cir. 2021) (affirming the district court's holding that a plaintiff lacked standing in a class action consumer products case where he alleged injury relating to products he did not buy

---

*9. By contrast, Patterson's overpayment theory also alleges that defendants misrepresented the overall safety of their products. [1] ¶ 154. This is more similar to the theory relied upon— and deemed sufficient—in *In re Aqua Dots*.

[4] *But see* Part III.B.3 (distinguishing between standing and entitlement to relief).

that were similar to those he did buy); *see also Payton v. Kane Cnty.*, 308 F.3d 673, 682 (7th Cir. 2002) (noting that a person cannot predicate standing on an injury which he does not share).

Patterson's claims involve all 1,000- and 2,000-milligram vapable oils sold by defendants. But the complaint alleges only that Patterson purchased two 1,000-milligram Breeze Canna pens from Cloud 9 Cannabis Dispensary in Edwardsville, Illinois. [1] ¶¶ 132, 134. Plaintiff does not allege that he purchased Cheetah products nor any 2,000-milligram Breeze Canna products. I agree with defendants that plaintiff cannot pursue claims related to products that he did not purchase.

The Seventh Circuit has not adopted the "substantially similar" test described in plaintiff's opposition brief. *See, e.g.*, *Gibson v. Albertsons Cos.*, 754 F.Supp.3d 793, 803 (N.D. Ill. 2024) (noting the lack of controlling authority and determining the plaintiff's alleged economic injury related only to the product she personally bought). While Patterson brings this suit as a putative class action, he is currently the only named plaintiff in the litigation. He lacks standing to assert claims relating to products he did not actually purchase. Patterson's standing is limited to claims based on the two Breeze Canna pens that he bought.

### B.    Illinois Consumer Fraud Act

The ICFA "is intended to protect consumers from unfair methods of competition and other unfair and deceptive business practices." *Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 830 (7th Cir. 2014) (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 416–17 (2002)). To successfully plead a cause of action for

8

misrepresentation under the ICFA, Patterson must allege (1) a deceptive act or practice by defendants; (2) defendants' intent that he rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade or commerce; (4) actual damage to Patterson; and (5) proximate cause. *McIntosh v. Walgreens Boots All., Inc.*, 135 N.E.3d 73, 80 (Ill. 2019). "Recovery may be had for unfair as well as deceptive conduct." *Robinson*, 201 Ill.2d at 417.

### 1. Misrepresentation or Deceptive Act

Defendants first argue that plaintiff has failed to identify a specific misrepresentation. [25] at 17–18. In response, plaintiff contends that he has adequately alleged two actionable misrepresentations: that the vapable oils are "smokeable" when they are not and that they are "safe" when they do not comply with state-mandated safety requirements. [29] at 17.

The problem with plaintiff's contention is that defendants neither represent their products as smokeable nor safe. According to plaintiff, the fact that defendants' products include the disclosure required for smokeable concentrates in Illinois is sufficient to establish that defendants represented their vapable oils as smokeable. [1] ¶¶ 106–07. But just because manufacturers of smokeable concentrates *must* include the warning that smoking is hazardous to one's health does not in turn mean that manufacturers must *not* include that same warning for non-smokeable products. Plaintiff cannot plausibly allege that including both the smoking-specific and CIP-specific warnings would lead a reasonable consumer to misunderstand the intended use of defendants' vapable oils.

Patterson further argues that whether any one of defendants' vapable oils is a cannabis concentrate or a CIP is a fact-intensive inquiry not appropriate for determination at the pleading stage. [29] at 18. But even if defendants did misrepresent their products as cannabis concentrates, such a statement would still not be actionable. "[M]isrepresentations or mistakes of law cannot form the basis of a claim for fraud." *McIntosh*, 135 N.E.3d at 84. Plaintiff's belief that the vapable oils are CIPs depends on the definition of "smoking" under Illinois law. While the statute defines smoking as "the inhalation of smoke caused by the combustion of cannabis," [1] ¶ 66, it does not go on to define "combustion." 410 ILCS 705/1-10. I agree with the reasoning adopted by other courts in this district that even if defendants miscategorized the legal status of their vapable oils, that would not be grounds for a plausible ICFA claim. *See, e.g.*, *Patterson v. Green Growth Grp., Inc.*, 2026 WL 735188, at \*6 (N.D. Ill. Mar. 16, 2026); *McKenzie v. Progressive Treatment Sols., LLC*, 2026 WL 636741, at \*7 (N.D. Ill. Mar. 6, 2026).

Plaintiff includes in his complaint images of the labels he seeks to challenge. He does not (and cannot) argue that these labels fail to comply with state labeling requirements. The challenged products are labeled as "vapes," [1] ¶ 101, which is indeed the "common name" of the product (and thus compliant with Illinois law). [1] ¶ 75. Plaintiff asserts that the product packaging informing users that the activation rate is immediate upon use runs counter to the state's prohibition on encouraging overconsumption. [1] ¶¶ 111–12. Yet plaintiff also includes an image of the label stating: "This product contains cannabis, and intoxication following use may be

10

delayed 2 or more hours." [1] ¶ 106. Again, defendants' potential overinclusion of warnings is not actionable misrepresentation.

With respect to plaintiff's allegation that defendants' vapable oils purport to be safe, this too is contradicted by the images included in the complaint. For one, general allegations about misrepresentations and omissions do not conform with Rule 9(b)'s heightened pleading standard. Despite alleging that Patterson "personally reviewed the label and packing of the Vapable Oil prior to purchase," plaintiff does not explain how the label deceived him into overpaying for the product or misrepresented that it was safe to consume. [1] ¶ 140. Contrary to plaintiff's complaint, defendants' products are not portrayed as "safe" or "legal"—their labels explicitly warn of "significant legal penalties" and health hazards. *See* [1] ¶ 106.

Further, the Act does not equate its possessory limits with safety limits. Plaintiff's complaint details the history of cannabis legalization in Illinois. For example, though the state originally adopted laws allowing medicinal cannabis use, the Act legalized certain forms of recreational use "in a manner similar to alcohol." [1] ¶¶ 46–48. Like with alcohol, it is reasonable to assume that a cannabis user may possess a higher quantity of cannabis without the expectation that he will use it all at once. The Act also enumerates different possessory limits for Illinois residents and non-residents. [1] ¶¶ 83–84. Plaintiff does not purport that this variance has anything to do with safety.

Finally, to the extent plaintiff seeks to allege that defendants' vapable oils misrepresent their legality, this theory is implausible. Cannabis is not legal under

11

federal law. Purchasing a greater quantity of an illegal product does not detract from the fact that the purchase of *any* amount of cannabis is illegal federally, As explained above, defendants' labels explicitly warn consumers of this fact. *See* [1] ¶ 106 ("Possession or use of this product may carry significant legal penalties in some jurisdictions and under federal law."). Patterson has not plausibly alleged that defendants' packaging misrepresented the status, safety, or legality of their product.

### 2. Unfair Conduct

Plaintiff argues that even if the complaint does not plausibly allege a deceptive act under the ICFA, he has sufficiently pleaded unfair conduct. [29] at 17–18. In determining whether particular conduct is unfair under the ICFA, courts ask whether the practice (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. *Batson*, 746 F.3d at 830 (citing *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)). Patterson focuses on the first factor. [29] at 17.

Conduct "offends public policy if it violates a standard of conduct embodied in a statute, the common law, or otherwise." *Leszanczuk v. Carrington Mortg. Servs., LLC*, 21 F.4th 933, 940–41 (7th Cir. 2021). Plaintiff's unfairness claim is premised on the idea that defendants omitted state-mandated warnings. As discussed above, the packaging of defendants' vapable oils is not false and misleading, nor does it promote overconsumption. If anything, the plethora of warnings contained on defendants' packaging operates to discourage—or at least limit—consumers' use of the products.

12

Further, where an unfairness claim under the ICFA is premised on the same conduct as the deception claim, the claims will rise and fall together. *See Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 464 (7th Cir. 2014). Because plaintiff's theory of unfairness replicates one of his theories of deceptive conduct, he has failed to state an ICFA claim and Count I is dismissed.

### 3. Actual Damages

Finally, even if defendants' conduct were deceptive or unfair, plaintiff has failed to plausibly allege actual damages. The actual damages element of an ICFA claim is distinct from the Article III injury-in-fact requirement. *See Rifkin v. Bear Stearns & Co.*, 248 F.3d 628, 631–32 (7th Cir. 2001) (evaluating Article III standing under federal law without reference to Illinois's statute). To satisfy the actual damages element of an ICFA action, plaintiff must show that he suffered an "actual pecuniary loss." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (citation omitted). An actual pecuniary loss occurs where the consumer is deprived of the benefit of his bargain, such as where he paid more than the product was worth or where a better price was available elsewhere in the market. *Id.*

Patterson alleges that he would not have purchased defendants' vapable oils had he known they were "unlawful and unsafe" and that he would have "purchased a legally complaint alternative instead." [1] ¶ 219. As already discussed, plaintiff cannot plausibly allege that any use of cannabis would be safe or legal (at the federal level). Purchasing any cannabis, regardless of the THC quantity, would expose plaintiff to physical and legal repercussions.

13

Patterson does not allege that the vapable oils did not work as intended or that there were cheaper alternative products on the market. Plaintiff's sole reference to a pecuniary loss comes in his allegation that he paid more than the value of defendants' products because they were "worthless." [1] ¶ 220. But this is a "conclusory assertion[] of actual damage." *Camasta*, 761 F.3d at 740. Contending that defendants' products are worthless simply due to alleged non-compliance with safety standards is a subjective assessment that fails to plead the "actual" of "actual pecuniary loss." In reaching this conclusion, I endorse the reasoning of other courts in this district that have been faced with nearly identical claims. *See Rodriguez v. Progressive Treatment Sols., LLC*, 2026 WL 710930, at *7 (N.D. Ill. Mar. 13, 2026); *Patterson*, 2026 WL 735188, at *7.

Count I is dismissed with prejudice. While a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should ordinarily be given at least one opportunity to try to amend his complaint before the entire action is dismissed, amendment here would be futile. Plaintiff cannot plead around the disclosed federal illegality of cannabis nor the dangers of cannabis use to suggest a misrepresentation where none exitsts. The labels he challenges are neither deceptive nor unfair as a matter of law. I have the discretion to dismiss with prejudice where a party does not make a showing of how it could cure the defects in the complaint. *Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 812 (7th Cir. 2021).

14

### C.  Other Fraud Claims

Common-law fraud in Illinois requires "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 496 (1996). Fraudulent concealment requires that "(1) the defendant concealed a material fact under circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3) the plaintiff could not have discovered the truth through reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages." *Neely v. Senne*, 2025 WL 871644, at *2–3 (Ill. App. Ct. 2025).

As discussed above, plaintiff has not adequately alleged a misrepresentation (or a false statement). Plaintiff has also not alleged that defendants concealed a material fact. Defendants have complied with state-mandated label requirements and defendants are not required to include additional warnings, particularly where the dangers associated with cannabis are common knowledge and can be discovered through reasonable inquiry.

Plaintiff's common-law fraud and fraudulent concealment claims fail for the additional reason that he has failed to plausibly allege actual damages—a requirement of both causes of action. Counts II and III are dismissed with prejudice.

### D.    Breach of Warranty

Defendants also move to dismiss plaintiff's breach of warranty claims. [25] at 28–29. Plaintiff alleges that defendants expressly and implicitly warranted that their vapable oils were "safe, effective, and appropriately dosed, and did not contain any undisclosed risks when consumed in their intended and instructed manner: vaping." [1] ¶ 258; *see also* [1] ¶ 285.

Both breach of express and implied warranty claims require privity of contract. *See George v. Amgen, Inc.*, 2019 WL 10893813, at *7 (N.D. Ill. June 6, 2019); *Sneed v. Ferrero U.S.A., Inc.*, 656 F.Supp.3d 777, 785 (N.D. Ill. 2023). As a general rule, unless personal injury is alleged, "implied warranties give a buyer of goods a potential cause of action only against his immediate seller." *Rothe v. Maloney Cadillac, Inc.*, 119 Ill.2d 288, 292 (1988). Plaintiff purchased his Breeze Canna pens from a third-party dispensary. [1] ¶¶ 132, 134. Defendants did not directly sell the vapable oils to Patterson so he cannot allege that he is in privity with them.

There are two exceptions to the privity requirement: the direct-dealing exception and the third-party beneficiary exception. *See Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 86 Ill.App.3d 980, 992–93 (1980). The direct-dealing exception applies only where the ultimate purchaser of the product communicated directly with the manufacturer. *See Rodriguez v. Ford Motor Co.*, 596 F.Supp.3d 1050, 1056 (N.D. Ill. 2022). The third-party beneficiary exception applies where the manufacturer knew "the identity, purpose and requirements of the dealer's customer and

16

manufactured or delivered the goods specifically to meet those requirements." *Frank's Maint. & Eng'g*, 86 Ill.App.3d at 992–93.

Plaintiff argues that these exceptions apply because his complaint alleges that defendants expressly warranted "to end-consumers through marketing and advertising that their Vapable Oils are smokeable cannabis concentrates." [29] at 26. Patterson does not, however, allege that he personally relied upon defendants' marketing materials to inform his purchasing decision. To the contrary, he alleges that he observed the product packaging on the *dispensary's* website. [1] ¶ 137. Even accepting as true plaintiff's allegation that the images on the dispensary website were created and approved by defendants, this allegation still does not satisfy either exception where plaintiff neither communicated directly with defendants nor plausibly alleged that defendants manufactured their vapable oils specifically to meet his requirements.

Equally detrimental to plaintiff's breach of warranty claims is the fact that he has not plausibly alleged actual damages. *See Kim v. Mercedez-Benz U.S.A.*, 353 Ill.App.3d 444, 460 (2004) (noting that damages are an essential element of a breach of warranty claim). "While it is not necessary that damages for breach of warranty be calculated with mathematical precision … [d]amages based on conjecture or speculation are precluded." *Shoop v. DaimlerChrysler Corp.*, 371 Ill.App.3d 1058, 1061 (2007) (citations omitted). Counts IV and V are dismissed with prejudice.[5]

---

[5] Like plaintiff's fraud claims, amendment of his breach of warranty claims would be futile. Patterson cannot amend around the privity requirement where he has already alleged that he purchased the vapable oils from a third party and relied on images on the third party's

### E.     Unjust Enrichment

Under Illinois law, unjust enrichment rises or falls with the related claims. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Because the conduct plaintiff challenges is insufficient to support his ICFA and breach of warranty claims, it is similarly insufficient to establish unjust enrichment. *See id.* at 518. Plaintiff's unjust enrichment claim is dismissed with prejudice.

## IV.     Conclusion

Defendants' motion to dismiss, [25], is granted. The case is dismissed with prejudice. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: June 22, 2026

---

website (as opposed to direct communications with defendants) when making his purchasing decisions. Alleging that he also reviewed the label and packaging on the products before purchase does not cure the privity defect.